STATE OF CONNECTICUT *v.* SALVATORE ANNUNZIATO

HOUSE, C. J., COTTER, LOISELLE, LONGO and BARBER, Js.

518

Argued May 9—decision released September 16, 1975

*Howard A. Jacobs,* with whom was *Jean L. Welty,* for the appellant (defendant).

*William F. Gallagher,* special assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

LOISELLE, J. The defendant was convicted, on a trial to the jury, of conspiracy to commit murder in violation of then General Statutes § 54-197 (now § 53a-48). The defendant's motion to set aside the verdict was denied by the trial court. The defendant has appealed from the judgment rendered on the verdict.

The defendant claims that the court committed error in denying his motions for a directed verdict and to set aside the verdict, in denying his motion to dismiss for want of jurisdiction over the person, in rulings on evidence, in failing to charge as requested, and in charging as it did.

The state's statement of facts[1] includes the following: At about 9:30 p.m. on August 10, 1968, Edward Gould went to Chip's Lounge in the Fair Haven section of New Haven to pick up a prescription left there for him by a druggist. When he arrived a party was in progress; the defendant, also known as "Midgie," his son Francesco Annunziato, Richard Biondi, Bruno Pino and others were in attendance. Gould sat at the bar and had three to five drinks. He saw the defendant sit down with friends at a table at the other end of the bar, where Biondi approached the defendant and whispered with him for several minutes. Later in the evening at Chip's Lounge, Pino observed Biondi talking with the defendant. Immediately after talking with the defendant, Biondi approached Pino and asked him to take Biondi's girl friend, Regina, home because he, Biondi, had "some business to do for 'Midgie.'" Biondi then went outside.

At about 12:30 a.m., Gould left Chip's Lounge and was met outside the front door by Biondi and Francesco Annunziato. He was asked to give them a ride up the street to Francesco's car. Gould agreed. He got into the driver's seat, Biondi got

[1] This appeal is governed by the new rules of appellate procedure for appeals in jury cases, §§ 629A through 635A of the Practice Book, which became effective on October 1, 1974. In compliance with rules 631A and 632A, the statement of facts of the parties is in narrative form and is annotated to supporting references in the transcript.

in the right front passenger's seat, and Francesco got in the back. Francesco instructed Gould to proceed to a corner and take a right, but Gould took a left instead. As he took the left turn Gould saw a gun in the rearview mirror. He jammed on the brakes, opened the door, jumped from the moving car and, as he jumped, felt something hit his body. He rolled on the ground, got up, ran across a parking lot to the rear of a gas station and finally found refuge in a house in the area.

A police detective went to the scene of the incident in the early morning of August 11, 1968, examined the car, which had jumped a curb, and found a bottle of medication prescribed to Gould in the car. Bullet holes and bullet fragments were found in the car, and it was determined that more than one gun was involved in the shooting. The detective then went to Gould's home, observed Gould with a shoulder wound and took him to the hospital, where a bullet fragment was removed from his body. On the night of the shooting, another officer observed Biondi, who was accompanied by Francesco Annunziato, at the hospital with a bullet wound in his left knee. Biondi was unwilling to make any statement to the police.

On the next day, August 11, Pino was in a restaurant where he saw the defendant with Francesco Annunziato and others. Pino heard the defendant, who was speaking in a loud voice and swearing, say, "Frankie can't do nothing right." Francesco did not respond to his father's statement.

In March, 1970, during a conversation between Gould and the defendant, Gould asked the defendant why he tried to kill him, and the defendant replied: "I want to kill you because you killed my

brother-in-law" Sonny Gondak. Gondak was killed by a hit-and-run driver in June of 1963, on State Street in New Haven, after alighting from a car driven by Gould. When Gould told the defendant about Gondak's death the next day, the defendant blamed Gould for the death.

Hostility developed between Gould and the defendant in July of 1968. Gould was associated with a group of men which included Edward Devlin. Devlin was the leader of this group, and Gould was Devlin's closest associate. The defendant was the leader of a group which included his son Francesco, Biondi, Pino and others. Prior to June of 1968, Devlin and the defendant were social friends and were seen together several times a week in Chip's Lounge. Their relationship terminated abruptly in the middle of June, and Devlin was not seen in Chip's Lounge after that. On two occasions after this, in June or July of 1968, Gould mentioned Devlin's name, and the defendant told Gould that he did not want to hear that name.

Francesco Annunziato and Biondi were the defendant's closest associates. When the defendant rode in his automobile, his son Francesco or Biondi would drive for him.

The evidence recited in the state's statement of facts which is annotated to the transcript,[2] when viewed in the light most favorable to sustaining the jury's verdict, supports the court's action in denying the defendant's motions to direct a verdict

[2] Under the new rules of appellate procedure in cases tried to a jury, it is specifically provided that the use of an appendix is no longer required. Practice Book § 629A. The sufficiency of the evidence to support the verdict may be tested by the statement of facts annotated to the transcript.

and to set aside the verdict. *State* v. *Saia*, 167 Conn. 286, 287, 355 A.2d 88; *State* v. *Romano,* 165 Conn. 239, 250, 332 A.2d 64; *State* v. *Brathwaite,* 164 Conn. 617, 619, 325 A.2d 284.

The defendant filed a timely motion to dismiss for want of jurisdiction over the person on the grounds that the judge issuing the bench warrant failed to find probable cause and that the state's attorney did not make the representations required by § 54-43 of the General Statutes.[3] The court denied the motion to dismiss.

The defendant argues that "[n]owhere did the judge indicate that *he* made a finding that probable cause existed" and that "[i]nstead of the State's Attorney representing that he had reasonable ground to believe that a crime had been committed in his jurisdiction, the State's Attorney merely *accused* the defendant of committing a crime." The defendant claims that since neither the judge nor the state's attorney stated in writing that he made a judgment of probable cause, the arrest warrant was insufficient as a matter of law. Through the fourteenth amendment to the federal constitution, the constitutional safeguards embodied in the fourth amendment as to the issuance of warrants are obligatory on the states. *Ker* v. *California,* 374 U.S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726. The fourth amendment provision that "no warrants shall issue, but upon probable cause, supported by oath or affirmation" applies to arrest warrants as well as

---

[3] Section 54-43 of the General Statutes provides: "Upon the representation of any state's attorney that he has reasonable ground to believe that a crime has been committed within his jurisdiction, the superior court or, when said court is not in session, any judge thereof, may issue a bench warrant for the arrest of the person or persons complained against . . . ."

to search warrants; *Giordenello* v. *United States,*
357 U.S. 480, 485, 78 S. Ct. 1245, 2 L. Ed. 2d 1503;
*State* v. *Licari,* 153 Conn. 127, 132, 214 A.2d 900;
and requires "that a state's attorney applying for
a bench warrant submit facts, supported by oath
or affirmation, from which the judge or court can
make an independent determination that probable
cause exists for the issuance of the bench warrant
under General Statutes § 54-43." *State* v. *Licari,*
supra, 132. For an arrest warrant to satisfy the
constitutional standard, the affidavits presented to
the judge must contain a sufficient basis for finding
that probable cause existed for his issuing the war-
rant after considering the facts alleged. *State* v.
*Saidel,* 159 Conn. 96, 99, 267 A.2d 449; *State* v.
*DeNegris,* 153 Conn. 5, 9, 212 A.2d 894; see *Giorde-
nello* v. *United States,* supra, 486. The record in
this case discloses that the judge who issued the
bench warrant had three affidavits before him.
These affidavits, taken together, substantially state
the facts outlined above and presented at the time
of the trial. It is unquestioned that the information
contained in these affidavits attached to the arrest
warrant affords a sufficient basis for a finding of
probable cause. The fact that the judge did not state
his finding of probable cause in the body of the
arrest warrant or that the state's attorney did not
state in writing his belief that a crime had been
committed did not render the arrest warrant invalid
or contrary to constitutional requirements.

The defendant claims error in the court's refusal
to allow his cross-examination of two witnesses,
Pino and Judith Papero, concerning the pendency
of criminal proceedings against them to which not
guilty pleas had been entered, to show their
interest and motive for testifying.

Although evidence of conviction where punishment may be more than a one-year term of imprisonment is admissible to affect credibility, evidence of arrest without conviction is not admissible to attack the credibility of a witness. *State* v. *Moynahan,* 164 Conn. 560, 600, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219. The defense, however, had sought to cross-examine the two witnesses concerning their arrests for the purpose of showing bias, motive and interest. The right to cross-examine a witness for the purpose of attacking credibility on the ground of bias, motive and interest was clearly stated in *State* v. *Luzzi,* 147 Conn. 40, 46, 156 A.2d 505. In *State* v. *Tropiano,* 158 Conn. 412, 426, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288, it is indicated that evidence of the not guilty plea of a witness, the guilty plea, and his subsequent sentencing was admissible to show motive, interest and bias.

In the present case, both witnesses had been arrested, and charges were pending against them to which they had pleaded not guilty. That evidence was a circumstance which might show or tend to show an expectation or hope on the part of the witnesses for immunity or leniency in the disposition of their own cases. That being so, the defendant had a right to attempt to elicit that evidence. *State* v. *Moynahan,* supra, 601; 3 Wigmore, Evidence (Chadbourn Rev.) §§ 949, 967; annot., 20 A.L.R.2d 1421 §§ 7, 12, and 62 A.L.R.2d 610 § 3. The rulings of the court excluding the questions for the purpose stated were erroneous. In order to constitute reversible error, however, the rulings must have been both erroneous and harmful. *Milton* v. *Wainwright,* 407 U.S. 371, 92

S. Ct. 2174, 33 L. Ed. 2d 1; *State* v. *Tropiano,* supra, 427; *State* v. *Fredericks,* 154 Conn. 68, 72, 221 A.2d 585.

Although there was independent evidence of the defendant's guilt other than the testimony of Pino, his testimony tended toward proof of the crime charged.

On cross-examination the defense brought out that Pino had been convicted of: (1) possession of burglary tools; (2) four counts of statutory burglary; (3) conspiracy to violate 18 U.S.C. 2113 (a) which involved bank robbery; and (4) possession and passing of counterfeit money. Pino denied having been convicted of possession of firearms in Florida. At the beginning of Pino's direct testimony, he admitted to these crimes, plus attempted breaking and entry. On cross-examination defense counsel also brought out that Pino decided to talk to the police just prior to being tried for bank robbery, that Pino, when he talked to the police about the Gould incident, was hoping for leniency, that Pino knew he could get up to twenty-five years on the federal bank robbery charges, that Inspector Ahern of the New Haven police had told him that he would do everything in his power to secure leniency in the federal case, and that after Pino talked to the police about the Gould incident he subsequently received a suspended sentence in the bank robbery case. It was also elicited that Pino had signed a written confession admitting the crime of arson, and that he had never been arrested for this crime. He was also questioned about his extensive and illegal use of drugs. Another witness testified for the defense that, while in jail with Pino, Pino told him that

"Mr. Ahern told him [Pino] if he could come up with some concrete information about [the defendant] . . . they would drop his bank robbery charge." It is evident that the jury were fully apprised of the circumstances surrounding Pino's decision to testify and of any bias, interest or motive for them to appraise properly his testimony. The added evidence that Pino had pleaded not guilty to narcotics charges would have been purely cumulative and of no real significance in view of the evidence showing the facts and circumstances surrounding Pino's decision to testify and the interest he had in testifying against the defendant, as well as of the argument of defense counsel as to such circumstances and the court's charge.[4] The court's ruling to exclude the cross-examination of

___

[4] The court charged in pertinent part as follows:

"You will recall that both Edward Gould and Bruno Pino, witnesses for the State, were questioned by the attorneys for the defendants, with respect to whether their testimony was motivated by hope or expectation of immunity or leniency on the part of the prosecuting authorities or law enforcement officials. In determining whether or not the testimony of these witnesses was motivated by hope or expectation of immunity or leniency on the part of the prosecuting authorities or law enforcement officials, it is not necessary for you to find that there was any basis from any act or word of the prosecuting authorities or law enforcement officials for the hope or expectation of immunity or leniency. The question is whether or not the witness had the hope or expectation of immunity or leniency, and not whether in fact said hope or expectation was justified by the actions of the prosecuting attorney or law enforcement officials.

"If you find that the testimony of Edward Gould or Bruno Pino was motivated by the hope or expectation of immunity or leniency on the part of the prosecuting authorities or law enforcement officials, you should consider the following. The testimony of a witness who provides evidence against the defendant which is motivated by hope or expectation of immunity or leniency on the part of the prosecuting authorities or law enforcement officials, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether such witness' testimony has been affected by his interest, or his motive to testify."

Pino's narcotics arrest was error, but it was harmless. *United States* v. *Reed,* 437 F.2d 57, 58–59 (2d Cir.); *Ray* v. *United States,* 412 F.2d 1052, 1054 (9th Cir.); *State* v. *Tropiano,* supra, 427; *State* v. *Fredericks,* supra, 72.

The defendant's brief states that Judith Papero testified for the state on rebuttal that she worked as a barmaid at Chip's Lounge on the night of August 10, 1968, and had observed the defendant and Biondi at Chip's Lounge; that Gould was not intoxicated that evening; that it was Joe Capone sitting next to Gould who was intoxicated and who fell off the bar stool. The court denied defense counsel the right to cross-examine this witness about her pending case for sale of narcotics, in which she had pleaded not guilty, to show her motive and interest in testifying. The cross-examination did bring out that in early 1970, she was convicted of possession of narcotics and dangerous drugs and that in May, 1970, she was again arrested and later convicted for possession of heroin. She also admitted that on August 10, 1968, and prior thereto, she had been using heroin.

The testimony of Judith Papero did not tend toward proof of the crime charged, and the verdict would not have been affected even if the jury chose to discredit her entire testimony. Under those circumstances the ruling complained of was harmless. *State* v. *Tropiano,* 158 Conn. 412, 427, 262 A.2d 147; *DeCarufel* v. *Colonial Trust Co.,* 143 Conn. 18, 21–22, 118 A.2d 798.

The defendant claims that the court erred when it allowed the state to elicit evidence that the defendant had been previously incarcerated in state prison, thereby indicating his prior conviction. The

defense called three witnesses to offer prior inconsistent statements which they claimed had been made to them by the state's witnesses Pino and Gould. Specifically, the three defense witnesses testified that Pino and Gould had told them that they did not know anything about the incident of August, 1968, and that they wanted to frame the defendant. Over the objection of defense counsel, the state, on cross-examination, inquired about the relationship between these three witnesses and the defendant. It was revealed that all three had been prison mates of the defendant.

"As a general rule, evidence of guilt of other crimes is inadmissible to prove that a defendant is guilty of the crime charged against him. *State* v. *Harris*, 147 Conn. 589, 599, 164 A.2d 399." *State* v. *Fredericks*, 149 Conn. 121, 124, 176 A.2d 581. The rule, however, is subject to certain exceptions. *State* v. *Fredericks*, supra; *State* v. *Harris*, supra. "That evidence tends to prove the commission of other crimes by the accused does not render it inadmissible if it is otherwise relevant and material; *State* v. *Marshall*, 166 Conn. 593, 600, 353 A.2d 756; *State* v. *Holliday*, 159 Conn. 169, 172, 268 A.2d 368; see *State* v. *Jenkins*, 158 Conn. 149, 152–53, 157, 256 A.2d 223; and if the trial judge determines in the exercise of judicial discretion that its probative value outweighs its prejudicial tendency. *State* v. *Moynahan*, 164 Conn. 560, 597, 325 A.2d 199; *State* v. *Holliday*, supra, 173." *State* v. *Ralls*, 167 Conn. 408, 417, 356 A.2d 147.

It is clear that the evidence offered by these three witnesses, if credited, seriously undermined the state's case against the defendant. The state had the right to show any bias or interest toward the defendant on the part of witnesses for the defense.

The evidence elicited from these witnesses by cross-examination concerning the nature of their relationship with the defendant indicated that they had been prison mates of the defendant for various periods of time. This was relevant evidence which had a direct bearing on the credibility of these witnesses. Since the credibility of the witnesses was particularly vital to both sides in this case, the court was not in error in not ruling that the prejudicial effect outweighed the probative value of this evidence.[5] See *State* v. *Harris,* supra, 601.

The defendant's remaining claims of error are primarily addressed to the court's charge. The thirty-second of the defendant's fifty requests to charge was: "If no motive to murder Edward Gould can be inferred or found, that may well tend to raise a reasonable doubt as to the guilt of the defendant." The court did not charge as requested, and this is claimed as error. Generally, when a party submits a request to charge on a specific issue, it is the duty of the court to comply in substance with the request if it is applicable; *Smith* v. *New Haven,* 144 Conn. 126, 130, 127 A.2d 829; *Tyburszec* v. *Heatter,* 141 Conn. 183, 187, 104 A.2d 548; but

[5] The jury's knowledge of the defendant's prior conviction did not presumptively prejudice the defendant's right to a fair trial; see *Murphy* v. *Florida,* 421 U.S. 794, 95 S. Ct. 2031, 44 L. Ed. 2d 589; and the trial court carefully cautioned the jury on this matter to mitigate any prejudicial effect as follows: "We have said many times in the selection of you as jurors, and it will be said very emphatically later on in the charge, that anything you may know or infer or guess about the accused is not in any way to be considered by you as prejudicial to him or to affect in any way the presumption that he is innocent of this crime until proven guilty by the evidence introduced before you in this trial. And, therefore, the fact that he had been in state's prison at some time is not in any way to be used by you as evidence against him or to implicate him in the crime with which he is charged here."

the court may properly refuse if the request is inaccurate. *State* v. *Alterio*, 154 Conn. 23, 29, 220 A.2d 451. In reviewing this claim of error, the charge must be considered as a whole. *Smith* v. *New Haven*, supra; *Danehy* v. *Metz*, 140 Conn. 376, 379, 100 A.2d 843.

Motive is not an element of the crime charged, and the state is under no obligation to show a motive of the accused to commit the crime charged. *State* v. *Rathbun*, 74 Conn. 524, 529, 51 A. 540. " 'Proof of motive is never necessary to support a conclusion of guilt otherwise sufficiently established, however significant its presence or absence, or its sufficiency, may be as bearing upon the issue of guilt or innocence.' *State* v. *Pisano*, 107 Conn. 630, 632, 141 A. 660." *State* v. *Guilfoyle*, 109 Conn. 124, 140, 145 A. 761. The presence or absence of motive, however, is a circumstance to be weighed with other evidence for the jury to consider. *State* v. *Rathbun*, supra. The defendant's request to charge was not strictly correct in that even a total lack of evidence on motive would not necessarily tend to raise a reasonable doubt so long as other evidence was sufficient to find guilt beyond a reasonable doubt. Moreover, the case as presented by the state was not one in which there was an absence of evidence of motive. On the contrary, one prong of the state's case focused upon gang warfare and another upon revenge occasioned by the defendant's belief that Gould had killed his brother-in-law. Because of the nature of the evidence presented, it is difficult to comprehend how the jury could find the defendant guilty without their also finding motive.

Aside from this, the court's charge was exemplary. It went into greater detail on the evidence than is customarily done, and the jury were

instructed on the elements of the crime charged with meticulous care. The court gave specific warning concerning the credibility of the state's witnesses where that was attacked by the defendant. The court's charge met the test of being in accordance with the law; it was adapted to the issues and sufficient for the guidance of the jury. *State* v. *DaVila,* 150 Conn. 1, 5, 183 A.2d 852; *Smith* v. *New Haven,* supra. The court's refusal to comply with the specific request could not have prejudiced the defendant. *Ziskin* v. *Confietto,* 137 Conn. 629, 633, 79 A.2d 816; see *State* v. *Alterio,* supra, 31.

The next claimed error is that the court commented to the jury on the defendant's failure to testify in violation of the principles enunciated in *Griffin* v. *California,* 380 U.S. 609, 614, 85 S. Ct. 1229, 14 L. Ed. 2d 106, reh. denied, 381 U.S. 957, 85 S. Ct. 1797, 14 L. Ed. 2d 730. During the course of charging the jury on circumstantial evidence as proof of criminal intent the court stated: "[I]t is true that a man himself, if he chooses to do so, may take the stand and testify directly as to what his own intention or his own knowledge was." The defendant contends that the natural interpretation of the court's remark by the jury was that if the defendant "chose to do so" he could have produced the only available direct evidence of his intention and knowledge and that this constituted a comment on the failure of the defendant to testify.

It is well established that it is constitutionally impermissible for a court or prosecutor to comment on a defendant's failure to testify in his own behalf. *Griffin* v. *California,* supra; *State* v. *Annunziato,* 154 Conn. 41, 221 A.2d 57. The complained of phrase, standing by itself, could well be interpreted as an oblique comment by the court on the failure

of the defendant to testify. That phrase, however, must be considered in context, and the charge must be read as a whole.[6] *State* v. *Lockman,* 169 Conn. 116, 123, 362 A.2d 920; *State* v. *Beaulieu,* 164 Conn. 620, 632, 325 A.2d 263. A phrase having a different meaning when culled from the charge will not be regarded as error when there is no "reasonable possibility" that the jury were misled.[7]

In this instance the jury were being instructed solely on the issue of circumstantial evidence. In that context, it was not only permissible to make the comment in question, but it is difficult to conceive of a meaningful instruction on the nature of circumstantial evidence, in comparison with direct evidence, without such a comment. When intention and knowledge of an accused are involved, the dis-

[6] The court charged as follows:

"Now you can readily see that what a man's intention or knowledge was at any given time is quite largely a matter of inference. Of course, it is true that a man himself, if he chooses to do so, may take the stand and testify directly as to what his own intention or his own knowledge was, and that testimony you can believe or not, according to whether or not it warrants belief. But no witness can be expected to come here and testify that he looked into another man's mind and saw therein a certain intention or a certain bit of knowledge. The only way that you, the jury, can here determine that either of these two defendants had intention or knowledge of certain acts which are alleged to have been the subject of this conspiracy might be what the circumstances were that were surrounding their conduct, and what their conduct was. And from those facts, infer what his purpose, intention or knowledge was."

[7] Ordinarily, the test of the correctness of the charge is whether it is reasonably probable that the jury were misled. *State* v. *Tropiano,* 158 Conn. 412, 433, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288; *Penna* v. *Esposito,* 154 Conn. 212, 215, 224 A.2d 536. Where, however, the claimed error concerns a federal constitutional question, the controlling test, and the one used in this instance, is whether it is "reasonably possible" that the jury were misled. The degree of that test is in accordance with the standard promulgated in *Chapman* v. *California,* 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241.

cussion would necessarily relate to the accused. As is clearly indicated in the footnote, the comments by the court where the phrase in question is present were wholly referable to the instructions concerning circumstantial evidence and the explanation and relevancy of that type of evidence. Further, on three separate occasions during the charge, the court explicitly and forcefully pointed out that no adverse inference could be drawn from the defendant's failure to testify. Considering the charge on this issue as a whole, as we must, there is no reasonable possibility that the jury were misled. *State* v. *Tropiano,* 158 Conn. 412, 433, 262 A.2d 147. See *Chapman* v. *California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241.

After giving instructions on the matter of the credibility of witnesses, the court stated: "You are then duty bound to draw from those facts, inferences as to the existence of other facts. Inferences, that is, which are reasonable inferences." At another point in the charge while instructing the jury on circumstantial evidence as it related to knowledge and intent the court stated: "To draw such an inference is not only the privilege but also the duty of a jury, provided, of course, that the inference drawn is a reasonable inference. In this case, therefore, it will be a part of your duty to draw all reasonable inferences from the conduct of the defendants in the light of surrounding circumstances as to what purpose, what intention, and what knowledge was in their minds at various times which will be relevant." The defendant claims error in these instructions insofar as they impose a mandatory duty on the jury to draw inferences. See *State* v. *Weiner,* 84 Conn. 411, 417, 80 A. 198.

These statements were made directly after the charge on credibility of witnesses, including the statement that the jury should determine the body of facts which they believed to be true from the mouth of witnesses. Shortly thereafter, in commenting on intent, the court stated: "[Y]ou must go further and determine, if you can, what they intended to do." Again, while still commenting on the subject of evidence to be determined by the jury, the court stated: "[A]fter you have decided which of the facts testified to by the witnesses you believe, and after you have decided what inferences are to be drawn as to the existence of other facts, you then have in mind the sum total of what you believe the true facts were about the claimed crime with which you are here concerned." In the court's caution to the jury concerning the court's comment on the evidence, it stated: "[I]f I refer to certain parts of the evidence . . . that you may find or infer . . . ." In its summation, after instructing the jury on the elements of the crime of conspiracy, the court stated: "In other words, the inferences which may reasonably be drawn from the facts proven as a whole must not only be consistent with guilt, but inconsistent with every reasonable hypothesis of innocence." Repeatedly, the court emphasized in the charge that the state must prove beyond a reasonable doubt every essential element of the crime in order to convict. In this connection it stated: "[I]f any fact or any element bears equally two ways, one toward innocence and the other toward guilt, then it must be given that direction which tends towards innocence. . . . [I]f you can, in reason, reconcile all the facts present with any reasonable theory consonant with the innocence of an accused, then, of course, you cannot find him

guilty." "The test to be applied to any part of a charge is whether the charge considered as a whole presents the case to the jury so that no injustice will result." *State* v. *Mullings,* 166 Conn. 268, 275, 348 A.2d 645. When considered in the context of the entire charge, the instruction complained of did not constitute prejudicial error. *State* v. *Tomassi,* 137 Conn. 113, 124–25, 75 A.2d 67.

Certain persons who were mentioned as being witnesses to the events in question were not called to testify by either the state or the defendant. Counsel for the defendant and counsel for the state both commented in their arguments to the jury that an unfavorable inference should be drawn against the other for failure to produce these witnesses. The court charged that where the defendant has produced certain witnesses, he cannot ask that an unfavorable inference be drawn against the state for failure to call witnesses as readily or more readily available to the defense to call and within its power to call. The court then continued and charged that if a potential witness could have been called by either party, then the jury could infer that the missing witness' testimony might have been unfavorable either to the state or to the defendant, or the jury could draw no inference at all. The complete charge on this issue is set out in the footnote.[8] As stated by the court in responding to the

---

[8] "Now I have some general comments on evidence — and the failure to call witnesses.

"The failure of the state to produce evidence within its power to produce and which should have been produced by the state pursuant to its duty to offer all the available evidence to aid the jury in ascertaining the truth as to facts relevant to the inquiry, permits the inference that the evidence withheld would be unfavorable to the state.

"The failure to offer such evidence is not proof of any specific fact, but it does permit the inference that the evidence would be

defendant's exception, this portion of the charge was one approved in *United States* v. *Evanchik,* 413 F.2d 950 (2d Cir.), and it is one which was reiterated in *United States* v. *Ploof,* 464 F.2d 116, 119 (2d Cir.)

The defendant claims that the charge as approved in *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598, is applicable in civil cases but not in criminal cases. He further claims that he has no duty to call any witnesses, and that the prosecutor's comment to the jury and the court's charge on unfavorable inference as applied to the defendant for failing to call a witness "stripped him of his presumption of innocence and shifted from

unfavorable to the state's cause to be weighed with the entire evidence of the case.

"Now you will recall in this connection that during the argument yesterday the defense counsel, Mr. Jacobs, specifically referred to the failure of the state to call Inspector Ahern, Clare Apicelli, Tommy Viola and Regina Baker, the latter having been . . . [Biondi's] date, the night of August 10, who was allegedly present when Biondi was said to have told Pino he had some business to perform for Midge.

"Mr. Jacobs objected when the state's attorney mentioned the defendant's failure to himself call Regina as well as Nicholas Celone who was allegedly present during some of the conversations.

"Now it is true as claimed, as argued at that time by Mr. Jacobs, that the defendants are not under any obligation to produce witnesses in their own behalf. That they do not have to go forward to prove their innocence. And that they can rely entirely on the presumption of innocence. But where as here they have produced certain witnesses, they cannot ask that the inferences of testimony unfavorable to the state be drawn from failure of the state to call additional witnesses as readily or perhaps even more readily available to the defense to call and within its powers to call as witnesses.

"And so in that connection I will charge you as follows: That if a potential witness could have been called by the state or by the defendants and neither side called the witness, then you may infer that the testimony of the absent witness might have been unfavorable either to the state or to the defendants or to both of them. But, on the other hand, it is equally within your province to draw no inference at all from the failure of either side to call a witness."

the state its burden of proof, and penalized . . . [him] for exercising his constitutional right to remain silent, offer no evidence, and still have the burden of persuasion rest with the state on all elements of the offense." The defendant claims that the comments made and the charge given were violative of the principles enunciated in *Griffin* v. *California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106.

It is the rule in the Second Circuit Court in criminal cases that where a witness is equally available to both parties and neither calls the witness, an inference may be drawn against either or both that the testimony of the absent witness might have been unfavorable, but no inference need be drawn. *United States* v. *Dibrizzi,* 393 F.2d 642, 646 (2d Cir.); see also *United States* v. *Crisona,* 416 F.2d 107, 118 (2d Cir.). Other circuits have followed this rule. *United States* v. *McClain,* 469 F.2d 68, 70 (3d Cir.); *United States* v. *Johnson,* 467 F.2d 804, 808–809 (1st Cir.), cert. denied, 410 U.S. 909, 93 S. Ct. 963, 35 L. Ed. 2d 270; see also *United States* v. *Free,* 437 F.2d 631, 636 (D.C. Cir.). Those cases have adopted what both Wigmore and McCormick have termed the "better rule." 2 Wigmore, Evidence (3d Ed.) § 288; McCormick, Evidence (2d Ed.) § 272. In *People* v. *Mills,* 40 Ill. 2d 4, 237 N.E.2d 697, 700, it was stated, citing *Watt* v. *People,* 126 Ill. 9, 32, 18 N.E. 340, that an appropriate test in deciding whether comments of a prosecutor, referring to the absence of witnesses who could have testified for the defendant, were violative of the defendant's right to remain silent is whether "the reference [was] intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify." See also *United States* v. *Thomp-*

*son,* 490 F.2d 1218, 1221 (8th Cir.); *United States v. Lipton,* 467 F.2d 1161, 1168 (2d Cir.), cert. denied, 410 U.S. 927, 93 S. Ct. 1358, 35 L. Ed. 2d 587; *United States ex rel. Leak* v. *Follette,* 418 F.2d 1266, 1269 (2d Cir.). If the comment refers to persons other than the defendant, it does not naturally and necessarily direct the jury's attention to the defendant's failure to testify. Annot., 14 A.L.R.3d 723 § 8; 1 Wharton, Criminal Evidence (13th Ed.) § 150.

In this state it is the rule that it is fair for counsel to comment and for the court to charge that an unfavorable inference may be drawn from the failure of a party to produce a witness under the circumstances stated in *Secondino* v. *New Haven Gas Co.,* supra, and amplified in *Queen* v. *Gagliola,* 162 Conn. 164, 168, 292 A.2d 890. In *Turner* v. *Scanlon,* 146 Conn. 149, 161, 148 A.2d 334, the court's charge that where a witness was available to both parties, an unfavorable inference could be drawn against either, depending on the circumstance, was approved. In *State* v. *Brown,* 163 Conn. 52, 58, 301 A.2d 547, it was indicated that in a proper case, a defendant could request the court to charge that an unfavorable inference could be drawn against the state for its failure to call a witness. It is not a violation of the defendant's constitutional rights for counsel to refer to the failure of a defendant in a criminal case to call a witness, for the court to charge concerning the failure of a party to call an available witness who would naturally be produced by that party, or for the court to charge, as it did, concerning a witness available to both parties, so long as neither the argument of counsel nor the charge to the jury would naturally and necessarily direct the jury's attention to the defendant's failure to testify. *United States* v.

*Lipton,* supra; *United States* v. *Evanchik,* supra. What was stated in *United States ex rel. Leak* v. *Follette,* supra, 1268, is applicable in this case. "Neither the language, the history, nor the policy of the self-incrimination clause affords support for the surprising proposition that in declaring that no person 'shall be compelled in any criminal case to be a witness against himself' the authors of the Bill of Rights intended to prohibit proper advocacy concerning the strength of the prosecution's case. . . . It is one thing to prevent the state from making capital of the defendant's invocation of the constitutional privilege but quite another to say the accused who avails himself of it is entitled to impose on the prosecution shackles that would be unavailable to a man who testifies in his own defense." Those comments referred to the argument of counsel that the defendant had offered no evidence to contradict the state's evidence. The principle stated would apply with equal strength to a comment and a charge concerning the failure to call available witnesses whom a party would naturally produce. The court was not in error in its charge in this respect, and the comment by counsel for the state was fair argument and was not violative of the principle announced in *Griffin* v. *California,* supra, or the rule as to the burden of proof in criminal cases. See *Mullaney* v. *Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508.

There is no error.

In this opinion the other judges concurred.