Salvatore ANNUNZIATO, Appellee,

v.

John R. MANSON, Commissioner of Corrections, Appellant.

No. 209, Docket 77–2017.

United States Court of Appeals, Second Circuit.

Argued Sept. 16, 1977.

Decided Nov. 21, 1977.

Ernest J. Diette, Jr., Asst. State's Atty., New Haven, Conn. (Arnold Markle, State's Atty., New Haven, Conn., of counsel), for appellant.

Howard A. Jacobs, New Haven, Conn. (Jean L. Welty, New Haven, Conn., of counsel), for appellee.

Before GURFEIN and VAN GRAAFEI-LAND, Circuit Judges, and COFFRIN, District Judge.*

GURFEIN, Circuit Judge:

Connecticut appeals from the granting by the District Court for Connecticut, Blumenfeld, J., of a writ of habeas corpus to a state prisoner, Salvatore Annunziato, unless the

* Hon. Albert W. Coffrin, United States District Judge for the District of Vermont, sitting by designation.

State retries him within sixty days. Judge Blumenfeld originally wrote an opinion granting the writ without an evidentiary hearing since neither party had requested one. *United States ex rel. Annunziato v. Manson,* 425 F.Supp. 1272 (D.Conn.1977). We dismissed the State's appeal to permit it to move for an evidentiary hearing below. Thereafter an evidentiary hearing was held and the Judge reaffirmed his decision in an unreported supplemental memorandum. This appeal followed.

Annunziato is presently serving a nine-to-fourteen-year sentence in a Connecticut prison on a 1971 conviction for conspiracy to commit murder. His original appeal to the Connecticut Supreme Court was denied on September 16, 1975, *State v. Annunziato,* 169 Conn. 517, 363 A.2d 1011 (1975). He then brought this petition for habeas corpus in the District Court, contending that the failure of the State to disclose exculpatory evidence concerning the interest and bias of a key witness was a denial of his constitutional right of confrontation, as well as a violation of the responsibilities of the prosecutor under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The district judge dismissed the petition on the ground that petitioner had failed to exhaust his remedies in the state court. Thereafter, petitioner sought a writ of habeas corpus in the Superior Court of Connecticut which was denied after a hearing. A Petition for Certification for Review to the Connecticut

Supreme Court was denied on July 15, 1976. Petitioner, having exhausted his state remedies then renewed the writ in the federal court.

The facts leading to petitioner's conviction are stated in detail at 425 F.Supp. at 1274–75 and are set forth in the margin.[1] So far as the points now raised by petitioner are concerned, the significant testimony at his conspiracy trial was that of the State's witness, Bruce Pino. Pino testified that he overheard a conversation between petitioner and his son at a restaurant the day after the intended murder victim, Edward Gould, was shot by petitioner's son, Frank, and another man, Richard Biondi, who was given a ride by Gould. In this conversation, Pino overheard petitioner say to Frank "You can't do anything right." Pino also testified to a hearsay conversation preceding the attempted murder in which Biondi[2] asked Pino to "take Regina [his girl] home because I have some business to do for Midgie [petitioner Salvatore Annunziato]." Thus, Pino connected petitioner to the shooting by the declaration of an alleged co-conspirator before the shooting and with a circumstantial admission of petitioner after the shooting.

Edward Gould testified to being shot. He implicated petitioner only by reference to a colloquy between himself and Annunziato in March 1970 when he asked petitioner "Why did you try to kill me?" To which petitioner replied, "You killed my brother-

---

1. "Petitioner was convicted of conspiracy to murder one Edward Gould on the night of August 10, 1968. From the evidence introduced at trial the jury could have found that petitioner was at a party at Chip's Lounge in Fair Haven that evening. Gould was drinking at the bar. He observed Annunziato consult in a whisper with Richard Biondi, an associate of Annunziato. Biondi, who had arrived at the party with a woman named Regina Baker, told Bruce Pino, another guest, 'Take Regina home because I have some business to do for Midgie [Salvatore Annunziato].' When Gould left the restaurant, he was met by Biondi and Francesco Annunziato, petitioner's son. They asked Gould to give them a lift to Francesco's car. While Gould was driving he saw a gun in the rearview mirror. He was wounded as he jumped from the moving vehicle.

"The next day, Bruce Pino overheard a conversation between petitioner and his son at Mike's Restaurant. According to Pino, Salvatore Annunziato swore and said in an angry tone, 'You can't do anything right.'

"About two years later, in March 1970, the victim Edward Gould had a conversation with petitioner in which he asked 'what the reason was that he wanted to kill me.' Petitioner responded, 'I want to kill you because you killed by brother-in-law.' Sonnie Gondak, Salvatore Annunziato's brother-in-law, had died in a hit-and-run accident in 1963. In addition, there was some testimony from which the jury could have inferred that petitioner and Gould belonged to rival and antagonistic groups of associates." (footnotes omitted)

425 F.Supp. at 1274–75.

2. Biondi died before petitioner's trial.

in-law, Sonnie Gondak." On cross-examination, Gould conceded that the first statement implicating petitioner was given by him to the police at the same time that he pleaded to reduced charges of conspiracy to commit bank robbery.[3] The plea was made four months before his trial testimony against petitioner in state court, and Gould admitted that he had not been sentenced at the time of trial. Gould also acknowledged that the colloquy with Annunziato occurred in the context of a discussion about Annunziato's finding some alibi witnesses for Gould in his bank robbery trial.

Thus, the connection of petitioner to the attempted murder of Gould was based upon the testimony of Gould and Pino. The judge permitted cross-examination concerning Gould's possible desire for favorable treatment on charges still pending against him, but refused to allow cross-examination on Pino's pending charges in an effort to show bias and interest. Indeed, Pino testified that he had made no bargain on his current arrests and refrained from mentioning some serious charges against him which were pending while he testified. The State's Attorney made no effort to correct Pino's testimony that he had no agreement with the State.

The first claim, that there had been a denial of the constitutional right of confrontation, was argued on the appeal from the conviction to the Connecticut State Court. The second claim, that the State had permitted Pino to perjure himself on whether he had a deal concerning pending charges was not before the Supreme Court of Connecticut, because the existence of that bargain did not come to light until some time later.

As to the first claim, the Supreme Court of Connecticut held that it was error to prevent the defendant from eliciting evidence that charges were pending against him (and another witness, Judith Papero) to which they had not pleaded guilty, for the purpose of showing "an expectation or hope on the part of the witnesses for immunity or leniency in the disposition of their own cases," 363 A.2d 1011, 1016. The court conceded that "although there was independent evidence of the defendant's guilt other than the testimony of Pino, *his testimony tended toward proof of the crime charged.*" 363 A.2d at 1017 (emphasis added). Nevertheless, the Connecticut Supreme Court held that, because Pino had admitted previous convictions, had acknowledged that when he talked to the police about the Gould incident "just prior to being tried for bank robbery . . . he was hoping for leniency", and had admitted that he subsequently received a suspended sentence, "the court's ruling to exclude the cross-examination of Pino's narcotic arrest was error, but it was harmless." *Id.*

Judge Blumenfeld agreed with the Connecticut Supreme Court that the exclusion of the evidence of bias was error, but disagreed that it was harmless error. Relying on *Davis v. Alaska,* 415 U.S. 308, 318, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), that the denial of the "right to effective cross-examination . . . would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it" *Brookhart v. Janis,* 384 U.S. 1, 3, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966); *Smith v. Illinois,* 390 U.S. 129, 131, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), he noted that "Pino's observations plus Annunziato's statement to the victim two years after the shooting comprised the state's major evidence against the accused" 425 F.Supp. at 1276. As the district court also pointed out, Judge Martin, the state habeas judge, had conceded that "without [this testimony] a conviction might not have been obtained." *Id.*

Judge Blumenfeld found that "[i]f petitioner had been allowed to inquire with respect to these arrests, he could have demonstrated Pino's present expectation of police and prosecutorial aid and protection in return for his testimony. . . . Here, the jury was left without any direct evidence as to what power the State could still

---

**3.** In pleading to a conspiracy to commit a bank robbery in Southport, Connecticut, in lieu of the substantive offense, Gould reduced his sentence from twenty-five to five years. He also was permitted to plead to conspiracy instead of robbery in connection with a bank robbery in Mt. Vernon, New York, reducing his maximum punishment under that indictment to five years.

exert over Pino's freedom," 425 F.Supp. at 1276–77.

We thus face the question with respect to the first claim whether the federal court should have honored the state court's ruling that, in the context of petitioner's trial, the error was harmless beyond a reasonable doubt. The State concedes that it is difficult to determine whether the state court concluded that the error was harmless under state evidentiary law or federal constitutional standards.[4]

■ In federal habeas proceedings, the federal court is not bound by a holding that constitutional error was "harmless." *Cf. United States ex rel. Washington v. Vincent,* 525 F.2d 262, 267 (2d Cir. 1975); *Townsend v. Sain,* 372 U.S. 293, 316 (1963). The affirmance of a conviction by a state court on the ground of harmless error should not foreclose federal reconsideration in a habeas corpus proceeding of the degree of harm inflicted by an error of constitutional magnitude. *See Davis v. Alaska,* 415 U.S. 308, 318, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Napue v. Illinois,* 360 U.S. 264, 269, 271, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *United States ex rel. Washington v. Vincent, supra,* 525 F.2d at 267–68 (2d Cir. 1975).

Petitioner's second claim emerged from subsequent testimony by Pino in another case, *State of Connecticut v. Albert Porto, Sr.,* No. 16974, in which he testified on March 9, 1972, that he had been arrested for possession of marijuana in December, 1968, and had been charged as a second offender. He further testified that part of the understanding he made with the authorities on January 26, 1970 was that he "wouldn't go to jail" on the drug charges. According to Pino, New Haven Police Inspector Stephen Ahearn, FBI Agent Ray Cossley, Ass't U.S. Attorney J. Daniel Sagarin, and State's Attorney Markle, all concurred in this arrangement.

Petitioner's second argument is premised on *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Judge Blumenfeld held that the good faith or bad faith of the prosecution was not material here, *see United States v. Agurs,* 427 U.S. 97, 104, 110, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and found that perjury was elicited by the prosecution on direct examination of Pino:

"Q. Did anyone ever make a promise for your testimony?

"A. No.

"Q. Has anyone ever made a deal to you or with you?

"A. No."

In the subsequent *Porto* case, Pino testified to the contrary, that in return for giving evidence against petitioner and others, he was promised that he would not only receive immunity from prosecution on the crimes of complicity in a shooting, a conspiracy to commit murder, and a fire bombing and bank burglary, but also that he would not serve any prison time on the two *pending* drug charges.

Judge Blumenfeld found that Pino's trial testimony in *Annunziato* "elicited by the prosecution, was false, even bordering on perjury," 425 F.Supp. at 1278. He found that there was an "elaborate agreement and promises actually made." *Id.*[5] The State's Attorney did in fact *nolle* the marijuana possession and second offender charges some time after the conclusion of petitioner's trial. After the evidentiary hearing, Judge Blumenfeld made his finding that "some prosecutor in the State's

---

4. *See Davis v. Alaska,* 415 U.S. at 318 n. 6, 94 S.Ct. at 1111. There Chief Justice Burger said:

"Although *Alford* [*Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624] involved a federal criminal trial and we reversed because of abuse of discretion and prejudicial error, the constitutional dimension of our holding in *Alford* is not in doubt. In *Smith v. Illinois,* 390 U.S. 129, 132–133, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), we relied, in

part, on *Alford* to reverse a state criminal conviction on confrontation grounds."

5. The testimony offered at the evidentiary hearing reinforced this conclusion. Judge Blumenfeld found the most credible testimony presented at that hearing to be that of Steven Ahearn, Chief Inspector of the New Haven Police Department. Ahearn acknowledged having promised Pino immunity from prosecution on narcotics possession and second offender charges

Attorney's Office knew of, authorized, and approved the agreement negotiated between Ahearn and Pino, a deal which was not disclosed to the defense or the jury in the *Annunziato* trial." (Supp. Memorandum of Decision).[6]

 We agree with the district court that where a prosecution witness *falsely* denies the existence of a leniency agreement, there is no need to prove a deliberate design to suborn or conceal perjury on the part of the prosecution. *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104.

On the other hand, when the prosecution simply fails to turn over a particular item of evidence, without involving perjury, the issue of materiality for constitutional purposes "must reflect our overriding concern with the justice of the finding of guilt," *United States v. Agurs,* 427 U.S. 96, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 and "if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." 427 U.S. at 113, 96 S.Ct. at 2402.

We think the *Agurs* test was not meant to weaken the test of *Giglio* where the prosecution witness falsely denies a leniency agreement and the prosecutor stands by without correcting the record. The rule remains, we think, that, in such case, the conviction must be set aside if there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury." 427 U.S. at 103, 96 S.Ct. at 2397.

Judge Blumenfeld found that Pino's testimony was false and that the prosecution knew or should have known of its falsity. He found also that in view of the frailty of the State's case, disclosure of

Pino's bargain that he would not be imprisoned on his pending indictments could have created a reasonable doubt that did not otherwise exist. These findings are not clearly erroneous.

We agree with the district court that telling the jury of past favors at the hand of the authorities is not the same as disclosure of an agreement for future reward for testifying. In evaluating bias and interest, the jury should be informed that the witness hopes for leniency on current charges and that the prosecution has a *present* leverage over the fate of the witness. A conviction on such testimony will stand, of course, but the jury is entitled to make its own assessment of the witness with all the cards on the table.

The judgment is affirmed. The sixty-day period for retrial shall run from the district court's entry of the mandate.

---

if Pino became a state's witness against petitioner. Although Ahearn could not recall with which assistant he had spoken, he was unshaken in his testimony that he had been authorized to make such a bargain by some assistant attorney in the State's Attorneys' Office. The state did not successfully discredit Ahearn's account. Nor did the state dispute the fact that Ahearn's recollection was consistent with prosecutorial practices in New Haven during the

1960's and early 1970's as all witnesses described them.

6. Judge Blumenfeld concluded his Supplemental Memorandum of Decision as follows:

"However, the additional evidence offered by the state only reinforces my earlier conviction that petitioner's trial did not comport with the due process standards of *Giglio v. United States, supra,* and *Agurs v. United States, supra.*"