UNITED STATES of America ex rel. James CARBONE

v.

John R. MANSON, Commissioner of Corrections.

UNITED STATES of America ex rel. Peter CARBONE

v.

John R. MANSON, Commissioner of Corrections.

Nos. H–77–310 and H–77–311.

United States District Court, D. Connecticut.

Feb. 3, 1978.

---

Jacob D. Zeldes, Elaine S. Amendola, Zeldes, Needle & Cooper, Bridgeport, Conn., for plaintiff, James Carbone.

Ira B. Grudberg, Jacobs, Jacobs & Grudberg, New Haven, Conn., for plaintiff, Peter Carbone.

John F. Mulcahy, Jr., Deputy Chief State's Atty., Robert E. Beach, Jr., Asst. State's Atty., Joseph T. Gormley, Jr., Chief State's Atty., Woodbridge, Conn., for defendant Commissioner of Corrections.

## RULING ON PETITIONS FOR WRITS OF HABEAS CORPUS

CLARIE, Chief Judge.

The petitioners, James Carbone and Peter Carbone, are both state prisoners, who are

presently confined in the Connecticut Correctional Institution at Somers. They were tried together and convicted by a state court jury on an information charging each with four counts of larceny. They have filed applications for writs of habeas corpus in this Court pursuant to 28 U.S.C. § 2254, claiming that their confinement is unconstitutional for the following reasons: (1) there was admitted into evidence at their trial a business document seized during the execution of an allegedly invalid search warrant, in violation of petitioners' Fourth Amendment rights; (2) the seizure and admission into evidence of that same business document also constituted a violation of their Fifth Amendment privilege against self-incrimination; (3) the trial judge impermissibly restricted the cross examination of the principal prosecution witnesses, in violation of petitioners' Sixth Amendment right to confront their accusers; and (4) the petitioners' conviction was based upon an information which charged the petitioners with the mutually exclusive crimes of theft and of receiving stolen goods, which violated petitioners' rights under the due process clause of the Fourteenth Amendment to the United States Constitution.

The Court finds that the petitioners have failed to establish the existence of constitutional error in their trial, and their respective applications for the issuance of writs of habeas corpus are accordingly denied.

### Facts

The petitioners were each charged in a four count substituted information with the crime of larceny of personal property valued in excess of two thousand dollars, in violation of Conn.Gen.Stat. § 53–63(a) (repealed Oct. 1, 1971). After a jury trial in the Connecticut Superior Court in Fairfield County, a verdict of "guilty" on each count was rendered against each of said petitioners. Both were sentenced on June 23, 1972 to serve a period of confinement of not less than three nor more than nine years in the Connecticut Correctional Institution at Somers.

The evidence presented at the trial by the State indicated that the petitioners on four separate occasions in January and February of 1971, participated in the theft of quantities of precious metals from Carpenter Technology Corporation, Inc., located in Bridgeport, Connecticut. The State's principal witnesses were Russell Scofield and Albert Edwards, two employees of Carpenter Technology, who plead guilty to removing the precious metal from the premises of their employer. Both confessed participants gave statements to Detective Robert J. Cafferty of the Bridgeport Police Department to the effect that they had removed the metal from the Carpenter Technology premises and transported it to Fairfield Scrap Iron and Metal Company (hereinafter "Fairfield Scrap"), a sole proprietorship owned by the petitioner James Carbone. The petitioner Peter Carbone is the brother of James and is also an employee of Fairfield Scrap. Edwards and Scofield testified at trial that the petitioners had made arrangements to purchase the selected stolen material prior to the thefts, had helped to unload the metal when it was delivered to Fairfield Scrap, and made payments to Edwards and Scofield for the stolen property.

The petitioners appealed their convictions to the Connecticut Supreme Court,[1] which remanded the case for a redetermination of the voluntariness of the consent to the search for the "Parks" receipt. On remand the Superior Court ruled the consent voluntary. The Connecticut Supreme Court, in the second appeal, affirmed this ruling and held that there was no merit to the petitioners' remaining assignments of error. *State v. Carbone,* 172 Conn. 242, 374 A.2d 215 (1977). A timely motion for reargument was denied by the Connecticut Supreme Court on February 3, 1977 and a timely petition for certiorari was denied by the United States Supreme Court on June 13,

---

1. This opinion does not appear in the *Connecticut Reports,* because of a practice of the Connecticut Supreme Court to eliminate the publication of those opinions which it later modifies prior to printing. This initial opinion appears at Volume XXXVI Connecticut Law Journal No. 37, p. 5 (March 11, 1975).

1977. 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063.

### Discussion of the Law

#### 1. The Fourth Amendment Claim

■ As one ground for issuance of the habeas writ, petitioners claim that the seizure and admission into evidence of a receipt bearing the name "John Parks" violated their Fourth Amendment right to be free from unreasonable searches and seizures. The Fourth Amendment and the exclusionary rule are, of course, binding upon the States. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

On September 2, 1971 the Bridgeport police applied for and obtained a search and seizure warrant for the premises of Fairfield Scrap. The warrant commanded a search for a variety of named precious metals as well as certain items which had been used in accomplishing the theft and delivery of those metals. The warrant was executed on that same date, but nothing named in the warrant was found on the premises. However, the police did seize a receipt from the business records of Fairfield Scrap bearing the name "John Parks." Prior to making application for the warrant, Detective Cafferty had been told by Scofield and Edwards that a false name, "John Parks", had been used on one of the receipt slips signed by Scofield when the stolen materials were delivered to Fairfield Scrap. Through an oversight this receipt was not listed in the warrant as one of the items authorized to be seized. In the course of conducting the search Alfred Constantino, an insurance investigator who was assisting Detective Cafferty in the investigation, asked if he could look at the sales receipts and slips. James Carbone replied: "Well, I see no reason why he shouldn't see them. Fine, let him have them." The "Parks" receipt was discovered during the ensuing search and subsequently introduced at trial.

A pretrial motion to suppress the "Parks" receipt was denied by the trial judge on the grounds that the search for that item had been orally consented to and that the search had not been wholly conducted by the police officers. On the petitioners' first appeal to the Connecticut Supreme Court the judgment of the Superior Court was vacated and remanded. The State Supreme Court ruled that Constantino was at all times acting at the behest of the Bridgeport police and that the seizure of the "Parks" slip was therefore subject to the constraints of the Fourth Amendment. The Court also ruled that the trial court had erred in not considering all of the circumstances surrounding the purported consent to the search, in order to determine whether consent had been given voluntarily. Specifically, the Connecticut Supreme Court held that there was some merit to the petitioners' claim that the warrant—issued more than six months after the latest delivery of stolen merchandise to Fairfield Scrap—was stale, and directed the trial court to consider this circumstance in determining the validity of the consent.

On remand the trial court ruled that the lapse of six months between the observations upon which the warrant was based and the issuance of the warrant did not preclude a finding that probable cause existed to believe that some of the items to be seized were still on the premises on September 2, 1971, because three of those items—two chains and a tarpaulin—would have been useful in the petitioners' business and thus would likely have remained on the business premises. The Superior Court also concluded that in light of the fact that there was probable cause to support the issuance of the search warrant and considering all other attendant circumstances, the consent of James Carbone to the search of the receipts was voluntary within the meaning of *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The Connecticut Supreme Court affirmed both of these conclusions.

The barrier which the petitioners must overcome, in order to challenge the ruling of the Connecticut Supreme Court on this issue, is the recent holding of the United States Supreme Court:

"that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell,* 428 U.S. 465, 481–482, 96 S.Ct. 3037, 3046, 49 L.Ed.2d 1067 (1976). The petitioners recognize the barrier constructed by *Stone,* but argue that the State court's resolution fell short of the "fair litigation" required by *Stone* in three respects: (1) the court applied an improper scope of review in determining whether the information contained in the affidavit was too stale to support the issuance of the search warrant, (2) the State Supreme Court did an about face on the validity of the search warrant after the decision in *Stone* insulated that court's decision from habeas corpus review, and (3) the State Supreme Court improperly deferred to the trial court on the issue of the validity of the warrant and the voluntariness of consent.

 The petitioners misconstrue the import of the *Stone* decision. In order to preclude habeas corpus review of Fourth Amendment claims, it is not required that the claim have been fairly litigated; all that is required is that there be an *opportunity* in the state court for full and fair litigation of the Fourth Amendment claim. *See Gates v. Henderson,* 568 F.2d 830, 837, (2d Cir. 1977) (en banc); *Graves v. Estelle,* 556 F.2d 743, 746 (5th Cir. 1977). Courts which have addressed the issue have experienced difficulty in determining the exact parameters of "an opportunity for full and fair litigation" of the Fourth Amendment claim. *See Gates v. Henderson, supra* at 837; *Graves v. Estelle, supra* at 746. This Court will not attempt a comprehensive definition of that language. However, the Court rules that on the precise facts of the instant case—where the petitioners have had their Fourth Amendment claim heard twice in the state trial court and twice in the State Supreme Court—the State of Connecticut has provided the petitioners with an opportunity for full and fair litigation of that claim.

To adopt any other stance in this case would completely emasculate the Supreme Court's decision in *Stone.* If this Court were to rule that *Stone* does not preclude habeas corpus review because the Connecticut Supreme Court did not apply an appropriate standard of review in deciding the Fourth Amendment claim, it would be the rare state prisoner indeed who would not allege that the state court had applied an improper standard when the state court ruled adversely to him in deciding his Fourth Amendment claim. The petitioners assert that the reason why the Connecticut Supreme Court questioned the staleness of the search warrant on the initial appeal and then subsequently affirmed the Superior Court's specific finding of probable cause was because *Stone* had been decided in the interim and the State Supreme Court thus learned that its later decision would be insulated from federal habeas review. In the first place, it is impossible for this Court to determine what mental processes were engaged in by the justices of the Connecticut Supreme Court in reaching their decision. More importantly, however, the very attempt by this Court to engage in such speculation would scarcely serve *Stone*'s goals of lessening friction between the federal and state systems and promoting the doctrine of federalism. The petitioners' third contention—that the State Supreme Court improperly deferred to the trial court's decision in reviewing the validity of the warrant and the voluntariness of consent—is similar to the contention that the trial court applied an improper standard in reviewing the Fourth Amendment claim.

This Court recognizes that "*Stone v. Powell* . . . holds that we have no authority to review the state record and grant the writ simply because we disagree with the result reached by the state courts," *Gates v. Henderson, supra* at 840, and that "[t]he exceptions to *Stone v. Powell's* prohibition on granting federal habeas relief for failure to exclude evidence at trial are narrow indeed." *Graves v. Estelle, supra* at 746. (footnote omitted). In the latter case

the district court had ruled that *Stone* would not preclude habeas review, where the state court's finding that the arresting officer had probable cause to believe that contraband was still in the defendant's automobile at the time the automobile was searched, was not fairly supported by the record. The Court of Appeals, emphasizing that *Stone* merely requires an *opportunity* for full and fair hearing in state court, reversed and declared:

> "To allow a federal district court to overrule a state court's resolution of whether there was or was not probable cause so as to admit or exclude evidence obtained by a particular search flies in the teeth of the *Stone v. Powell* [decision]." *Id.* at 746.

In the case *sub judice,* where the petitioners' Fourth Amendment claim has been heard twice in the trial court and twice in the State Supreme Court, the following admonition is persuasive:

> "However, though we might disagree as to the merits of the petitioner's claim were we sitting as an appellate court of first resort, we construe *Stone* to mandate that we not second-guess our state brethren in cases such as this which present murky questions of fourth amendment probable cause." *Hines v. Auger,* 550 F.2d 1094, 1099 (8th Cir. 1977).

### 2. *Fifth Amendment Claim*

The petitioners further urge that the admission into evidence of the "Parks" receipt violated their Fifth Amendment right against self-incrimination. That right was made applicable to the States in *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). In a case which is on all fours with the present one, the Supreme Court held:

> "the search of an individual's office for business records, their seizure, and subsequent introduction into evidence do not offend the Fifth Amendment's proscription that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself.'" *Andresen v. Maryland,* 427 U.S. 463, 477, 96 S.Ct. 2737, 2747, 49 L.Ed.2d 627 (1976).

The petitioners would distinguish *Andresen* on the ground that the search warrant in that case was valid, whereas in the present case the seizure of the "Parks" receipt was allegedly conducted pursuant to an invalid warrant and there was no voluntary consent to the search.

This argument is merely an attempt to circumvent *Stone v. Powell* by the device of adding a Fifth Amendment claim to what is at bottom a dispute over whether the search violated the Fourth Amendment. The Second Circuit has recently held that *Stone* precludes federal habeas review of a Sixth Amendment claim, where the basis of the Sixth Amendment claim is an alleged Fourth Amendment violation. In that case the petitioner challenged the adequacy of his counsel in a habeas petition on the ground that his attorney had failed to challenge a search in a pretrial motion. The court, noting that a review of the ineffective assistance of counsel claim would necessitate a relitigation of the Fourth Amendment issue, held:

> ". . . LiPuma certainly was afforded an 'opportunity for full and fair litigation' of his constitutional claim in the State courts, and *Stone* must be applied here as an additional ground for reversal of the district court's order.

> "The fact that petitioner's claim is ostensibly grounded on the Sixth, rather than the Fourth, Amendment does not negate Stone's applicability, because at the heart of this case lies an alleged Fourth Amendment violation." *LiPuma v. Com'r, Dept. of Corrections, St. of N. Y.,* 560 F.2d 84, 93, n. 6 (2d Cir. 1977).

As previously discussed, the petitioners in the present case have had ample opportunity for a full and fair litigation of their Fourth Amendment claim. The rationale of *LiPuma* applies with equal force here to preclude habeas review of this alleged Fifth Amendment violation, where its resolution would require relitigation of the Fourth Amendment issue. The Court must view the situation as if the verbal consent to search for the receipts were valid. *Andre-*

*sen* is then dispositive; there was no compulsion and the Fifth Amendment was not violated.

■ As an additional ground of decision, the Court holds that the petitioners have failed to exhaust their presently available state remedies with respect to the Fifth Amendment claim within the purview of 28 U.S.C. §§ 2254(b) and (c). While that claim was presented to the trial court, the petitioners abandoned that issue on their appeal to the Connecticut Supreme Court. The petitioners claim that the statement in their brief requesting that the State Supreme Court "review the matters surrounding Exhibit O (the 'Parks' receipt) in their entirety," was sufficient to present the issue. The Court finds that this reference does not satisfy the requirement that "the [federal] claim [must be] 'fairly presented to the state [appellate] courts.' *Picard v. Connor,* (1971) 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438." *Frazier v. Czarnetsky,* 439 F.Supp. 735, 737 (S.D.N.Y.1977). In *Picard* the Supreme Court held that it is not sufficient to merely present to the state court the facts upon which the appellant's claim is based; the appellant must also specify the particular constitutional provision upon which he is relying. 404 U.S. at 276–278, 92 S.Ct. 509.

■ In the instant case, petitioners' brief to the Connecticut Supreme Court only referred to the Fourth Amendment with respect to the alleged erroneous admission of the "Parks" receipt; no reference was made to the Fifth Amendment. A broad request that the Connecticut Supreme Court review the "Parks" receipt in its entirety is not adequate to comply with Connecticut Practice Book § 631A(c)(3), which mandates that the appellant's brief include any objection to a ruling of the trial court "and the ground on which it is based." Even though

the petitioners did pursue their Fifth Amendment claim in their assignments of error to the State Supreme Court, the Connecticut Supreme Court has long and consistently held that assignments of error which are not pursued in the brief are considered abandoned. *Corriveau v. Jenkins Bros.,* 144 Conn. 383, 386, 132 A.2d 67 (1957); *Martino v. Grace New Haven Hospital,* 146 Conn. 735, 736, 148 A.2d 259 (1959); *Fleischer v. Kregelstein,* 150 Conn. 158, 159, 187 A.2d 241 (1962); *Stoner v. Stoner,* 163 Conn. 345, 348, 307 A.2d 146 (1972); *Morris v. Timenterial, Inc.,* 168 Conn. 41, 43, 357 A.2d 507 (1975). Moreover, it is not sufficient for the appellant to state in general terms that he is pursuing all assignments of error. *Stoner v. Stoner,* 163 Conn. 345, 348, 307 A.2d 146 (1972). "The appellant's brief should *specifically* set forth the claims and reasons upon which he relies." *Missionary Society v. Coutu,* 134 Conn. 576, 578, 59 A.2d 732, 733 (1948) (emphasis supplied).

■ The exhaustion requirement only prohibits federal habeas review of a claim when there are "state remedies still open to the habeas applicant at the time he files his application in federal court." *Humphrey v. Cady,* 405 U.S. 504, 516, 92 S.Ct. 1048, 1055, 31 L.Ed.2d 394 (1972). The petitioners have a potential state remedy available in that state habeas corpus is open to them, if they can plead and prove that their failure to advance their Fifth Amendment claim in the Connecticut Supreme Court was not the result of a deliberate bypass of state procedures. *Vena v. Warden,* 154 Conn. 363, 366–367, 225 A.2d 802 (1966). Therefore, unless and until the Connecticut courts rule that the Fifth Amendment claim may not be pursued on state habeas corpus, the petitioners have failed to exhaust presently available state remedies.[2]

---

2. Ordinarily a state prisoner need not pursue state collateral remedies in order to satisfy the exhaustion requirement. *See, e. g. Roberts v. LaVallee,* 389 U.S. 40, 42, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967). However, this rule only applies where the federal claim has already been presented to the state's highest court. *Humphrey v. Cady,* 405 U.S. 504, 516, n.18, 92

S.Ct. 1048, 31 L.Ed.2d 394 (1972). *Brown v. Allen,* 344 U.S. 443, 447, 73 S.Ct. 397, 97 L.Ed. 469 (1953). Where, as here, the petitioner did not present the particular claim to the State Supreme Court on his direct appeal, the requirement that he pursue that claim in a state collateral proceeding does no violence to the proposition that the petitioner need not "file

■ While such a ruling from the Connecticut Supreme Court would remove the exhaustion barrier, it would immediately erect another barrier to federal habeas review of this claim, because the petitioners would then be guilty of a procedural default and there has been no showing before this Court of "cause" and "prejudice" for the default. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Since the Court in *Sykes* left intact its holding in *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), it remains undecided which procedural waivers will be evaluated under *Fay's* "deliberate bypass" standard and which under the narrower "cause" and "prejudice" test of *Sykes.* It appears, however, that the Court is creating a dichotomy in which the *Sykes* standard applies to those decisions normally committed to counsel and the *Fay* test applies to those entrusted to the defendant himself. *Frazier v. Czarnetsky,* 439 F.Supp. 735, 737–738 (S.D.N.Y.1977). Given the Second Circuit's recent observation that "decisions concerning which legal issues will be urged on appeal are uniquely within the lawyer's skill and competence, and their resolution is ultimately left to his judgment," *Ennis v. LeFevre,* 560 F.2d 1072, 1075 (2d Cir. 1977), the Court holds that the as yet undefined *Sykes* "cause" and "prejudice" standard governs the present case. Therefore in the absence of any affirmative showing of cause for the default and any prejudice resulting therefrom,[3] the petitioners are bound by their counsel's decision to abandon the Fifth Amendment issue on appeal.[4]

■ Finally, even if these procedural barriers could be surmounted, petitioners would be denied relief. In the first place Peter Carbone, who is a mere employee of Fairfield Scrap without any ownership rights in the enterprise, lacks standing to challenge the introduction of the "Parks" receipt on Fifth Amendment grounds. Reaffirming the principle that the Fifth Amendment privilege is a personal one, the Supreme Court has stated:

> "Relying on this fundamental policy limiting the scope of the privilege, the Court in *White* [*U. S. v. White,* 322 U. S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542] held that 'the papers and effects which the privilege protects must be the private property of the person claiming the privilege, or at least in his possession in a purely personal capacity.' 322 U.S. at 699." *Bellis v. United States,* 417 U.S. 85, 90, 94 S.Ct. 2179, 2184, 40 L.Ed.2d 678 (1974).

Secondly, the Fifth Amendment prevents the State from compelling only that evidence which is of a testimonial or communicative nature. *Schmerber v. California,* 384 U.S. 757, 761, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In the present case the only communicative aspect to the consent of the search of Fairfield Scrap's receipts is the implied admission of the existence and possession of those receipts. As the Supreme Court stated in *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976):

---

repetitious applications in the state courts." *Humphrey v. Cady, supra,* 405 U.S. at 516 n.18, 92 S.Ct. at 1056.

**3.** The Supreme Court in *Sykes* held that it is the petitioner who bears the burden of pleading and proving "cause" and "prejudice." 433 U.S. 72, 97 S.Ct. at p. 2508.

**4.** *Sykes* arose in the context of a procedural default at trial, whereas the present case involves a procedural default at the appellate level. However, this is not a distinction which should make a difference. In holding that the standards of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) must be met to justify intervention in a state judicial proceeding where the appellant has failed to exhaust his state appellate remedies, the Supreme

Court noted that it is the state's appellate courts which are the most appropriate forums for resolution of constitutional contentions. The Court concluded:

> "In short, we do not believe that a State's judicial system would be fairly accorded the opportunity to resolve federal issues arising in its courts if a federal district court were permitted to substitute itself for the State's appellate courts." *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 609, 95 S.Ct. 1200, 1211, 43 L.Ed.2d 482 (1975).

*See also Frazier v. Czarnetsky,* 439 F.Supp. 735 (S.D.N.Y.1977) where the court decided *sub silentio* that the rationale of *Sykes* applies to procedural waivers at the appellate as well as at the trial level.

"It is doubtful that implicitly admitting the existence and possession of the papers rises to the level of testimony within the protection of the Fifth Amendment." *Id.* at 411, 96 S.Ct. at 1580.

### 3. *The Sixth Amendment Claim*

The petitioners were prevented by the trial judge from inquiring into the prior invocation of the Fifth Amendment privilege by the two Government witnesses, Scofield and Edwards, when being deposed in a civil suit brought by Carpenter Technology against them and the Carbones. The petitioners contend that at the time Scofield and Edwards exercised their Fifth Amendment rights and refused to testify in the civil deposition, they had already decided to cooperate with the prosecution. Thus, they contend, the pair's refusal to testify was motivated not by a fear of criminal prosecution, but rather by a desire to prevent the petitioners from learning what their testimony in the criminal trial would be, until they took the witness stand in that proceeding. The petitioners claim that the trial judge's ruling, that the invocation of the

Fifth Amendment at the civil deposition could not be probed, denied them their right to confront their accusers, in violation of the Sixth Amendment.

 While the Sixth Amendment by its terms is applicable only to the federal government, the right to confrontation has been held applicable to the states via the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Assuming *arguendo* that the petitioners' questioning of Scofield and Edwards regarding their prior assertion of their Fifth Amendment privilege would have been proper,[5] it is clear that not every evidentiary ruling rises to a constitutional dimension so as to require habeas corpus relief. *United States ex rel. Annunziato v. Manson,* 425 F.Supp. 1272, 1275 (D.Conn. 1977), aff'd 566 F.2d 410, (2d Cir. 1977); *Welcome v. Vincent,* 549 F.2d 853, 856 (2d Cir. 1977), cert. den. 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084. While the trial judge may not completely deny access to an area that is properly the subject of cross-examination, the extent of cross-examination within that area is something which must

---

**5.** This issue is not free from doubt. Supreme Court Standard 513 provides, in relevant part:.
"(a) Comment or inference not permitted.— The claim of a privilege, whether in the present proceeding or upon a prior occasion, is not a proper subject of comment by judge or counsel. No inference may be drawn therefrom."
While Congress struck this provision when it was promulgated by the Supreme Court as a Federal Rule of Evidence, the provision still has utility as a Supreme Court Standard. *See* Weinstein and Berger, *Weinstein's Evidence* ⁎ 513[01]. The Supreme Court has stated that the Fifth Amendment privilege deserves "broad protection" and that it prevents "any penalty" for its exercise. *Spevack v. Klein,* 385 U.S. 511, 514–515, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967); *see also Malloy v. Hogan,* 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968). The Court has defined "penalty" as anything which "cuts down on the privilege by making it costly." *Griffin v. California,* 380 U.S. 609, 614, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). It has been held that no unfavorable inference may be drawn from a person's exercise of his Fifth Amendment privilege. *Grunewald v. United States,* 353 U.S. 391, 423, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957); *United States v. Tomaiolo,* 249 F.2d 683, 691

(2d Cir. 1957); *United States v. Williams,* 464 F.2d 927, 930–931 (8th Cir. 1972); *United States v. Glasser,* 443 F.2d 994, 1005 (2d Cir. 1971), cert. den. 404 U.S. 854, 92 S.Ct. 96, 30 L.Ed.2d 95 (1971). Those cases may be distinguished on the ground that in each case it was the prosecution that was attempting to draw an unfavorable inference from the invocation of the privilege by the defendant or one of his witnesses, whereas in this case it is the defendants who wished to make use of the prosecution's witnesses' exercise of their privilege. Moreover, it is clear that an unfavorable inference is often drawn from a person's reliance on his privilege where he is not a criminal defendant. *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) (permissible to draw adverse inference from silence of witness in prison disciplinary hearing); *Arthurs v. Stern,* 560 F.2d 477 (1st Cir. 1977) (disciplinary board may draw unfavorable inference from doctor's refusal to testify at disciplinary hearing); *Paynes v. Lee,* 362 F.Supp. 797 (M.D.La. 1973), aff'd 487 F.2d 1307 (5th Cir. 1974) (in civil action jury may draw unfavorable inference from defendant's assertion of his privilege). Nevertheless, because of the way in which the Court has decided the Sixth Amendment claim, there is no need to reach this issue.

be left to the sound discretion of the trial judge. *United States v. Jackson,* 482 F.2d 1167, 1176 (10th Cir. 1973), *cert. den.* 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111 (1974); *United States v. Polk,* 550 F.2d 1265, 1269 (10th Cir. 1977); *Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *United States v. Finkelstein,* 526 F.2d 517, 529 (2d Cir. 1975), *cert. den.* 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976); *United States v. Jorgenson,* 451 F.2d 516, 519–520 (10th Cir. 1971), *cert. den.* 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed.2d 793 (1972). The Second Circuit, holding that an abuse of discretion must be found in order to justify reversal for a ruling on the extent of cross-examination, has stated that a trial court's ruling in such matters must be approached "with great deference." *United States v. Jenkins,* 510 F.2d 495, 500 (2d Cir. 1975).

The extent of the cross-examination permitted here and the jury charge distinguish the present case from *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *United States v. Pfingst,* 477 F.2d 177 (2d Cir. 1973), *cert. den.* 412 U.S. 941, 93 S.Ct. 2779, 37 L.Ed.2d 400 (1973) and *Annunziato v. Manson,* 566 F.2d 410 (2d Cir. 1977). In the latter cases

evidence concerning the interest and bias of a key prosecution witness was completely withheld from the jury. By contrast, this is clearly not a case where the jury was presented no evidence with respect to Scofield's and Edwards' motivation for testifying. The extensive cross-examination permitted by the trial court elicited, *inter alia,* the following facts: Edwards and Scofield had only been charged with one count of larceny despite the fact that they could have been charged with six counts; they had still not been sentenced at the time of their testimony and they faced a possible sentence of up to 120 years, if the State were to prosecute them on all six counts; they had plead guilty because they had been caught "red-handed"; they knew that the police were interested in finding to whom the metal had been delivered; and it was their hope that their cooperation would result in lenient sentences.[6] Additionally the trial judge, in his charge, cautioned the jurors concerning the possible bias of the witnesses, specifically telling them to consider the fact that Scofield and Edwards were two self-confessed thieves who, as they had not yet been sentenced, may have had much to gain from testifying for the State.[7]

---

**6.** See generally Trial Transcript at pp. 322–327, 394–395, 413–417, 552, 593, 617–619, 521–522, 634–636, 638–641, 663–663A. For example, the following colloquy occurred between defense counsel and Scofield:

"Q All right. And isn't it true that at that time, you knew that both the police and Carpenter Steel were extremely interested in finding out who you claim you brought the metal to. Isn't that so?
A Right.
Q All right. And you knew at that time that you were in bad shape on this charge against you of having stolen stuff, because you were caught red-handed. Isn't that so?
A Right.
Q And at that stage of the game, you were interested in coming out of this thing as best you could. Isn't that so?
A Well,—
Q Isn't that so?
A Yes.
Q All right. You wanted to get the best deal you could for yourself. Isn't that right?
A Yes." Trial Transcript at p. 634.

Similarly, defense counsel was able to extract the following concession from Edwards:

"Q Now, let me ask you this, When you gave this statement concerning the Carbones, you were thinking about your general welfare, weren't you, sir?
A To the point that I was caught.
Q All right. And you wanted to get out of it as best you could. Isn't that right?
A Yes, I imagine so.
Q You wanted to make the best you could out of a bad situation. Right?
A Yes.
Q You were caught.
A Yes." Trial Transcript at p. 325.

**7.** See Trial Transcript at pp. 1093–1095. In cautioning the jurors on the weight to give the testimony of an accomplice to the crime, the trial judge charged:

"You may consider, for example, that he is a self-confessed criminal, everything else being equal, you would not ordinarily believe the testimony of a man who has committed a crime involving moral turpitude as readily as you would that of a man of good character. The amount of moral turpitude involved and the participation of the witness in the crime should be weighed. A self confessed crimi-

In light of the extensive cross-examination and the trial judge's charge, the Court finds that the issue of the witnesses' bias was fairly before the jury. *See United States v. Brown,* 546 F.2d 166, 172–173 (5th Cir. 1977). The trial judge was well within his rights in determining that the cost of shifting the focus of the trial to the witnesses' motivation in refusing to testify in a different proceeding would outweigh any possible benefit to the defendant. *United States v. Jenkins,* 510 F.2d 495, 500 (2d Cir. 1975). Moreover, the claimed relevance of the proffered testimony was highly speculative, in that it is not at all clear that any inference can reasonably be drawn from the invocation of the Fifth Amendment on the advice of counsel. *See United States v. Reed,* 437 F.2d 57, 59 (2d Cir. 1971). In short,

"We agree that complete preclusion of cross-examination as to motive for testifying is an abuse of discretion; but beyond that, the issue is whether defense counsel had an opportunity to bring out considerations relevant to motive or bias. Here, counsel was not prevented from adequately establishing such a motive . . . ." *United States v. Mahler,* 363 F.2d 673, 677 (2 Cir. 1966).

### 4. *The Adequacy of the Substituted Informations*

Petitioners were tried and convicted upon substituted informations charging them each with four separate counts of larceny committed on distinct dates in January and February of 1971. Each count alleged a violation of Conn.Gen.Stat. § 53–63(a), which has since been repealed. One charged under that statute could be convicted upon proof either that he was a

principal thief or that he was a receiver of stolen goods. *State v. Palkimas,* 153 Conn. 555, 562, 219 A.2d 220 (1966). However, the two crimes are mutually exclusive, in that one cannot be a principal thief as well as a receiver of the same stolen goods. *Id.* at 561, 219 A.2d 220. At several points in the state proceedings petitioners asked the trial court to require the prosecution to specify with which of the two crimes the petitioners were charged. Each time this request was denied. The Connecticut Supreme Court held that it was error for the prosecution to not specifically tell the defendants that they were being charged both as principals and as receivers. However, the court ruled that this error was harmless beyond a reasonable doubt, reasoning:

"Obviously, the experienced counsel for James Carbone was aware that § 53–63(a) was violated either by larceny or by receipt of stolen property; otherwise he would not have asked the prosecution to elect between the two theories. He undoubtedly understood the state's refusal to elect as an implicit statement that it was charging both and would endeavor to prove either." *State v. Carbone,* 172 Conn. 242, 258–259, 374 A.2d 215, 225 (1977).

Of course, this Court must decide for itself whether this error was harmless beyond a reasonable doubt. *Annunziato v. Manson,* 566 F.2d 410, 412 (2d Cir. 1977). The Court finds the reasoning of the Connecticut Supreme Court to be persuasive. The refusal of the prosecution to choose between the two theories could only have meant that it would attempt to convict the petitioners upon proof of either. Defense counsel's repeated request that the State choose one theory or the other clearly demonstrates

---

nal should not be disbelieved, however, in whole or in part solely because he is a self confessed criminal. His testimony must be judged as is the testimony of all other witnesses to determine whether any part or the whole or none of it is credible or believable. Of course, in determining what weight, if any, you will or will not give to his testimony, you may also consider what influence, if any, waiting to be sentenced may or may not have upon his testimony. If you feel that he may in his own mind be looking for or hoping

for some favors in the final disposition of his own case, and therefore his testimony may be colored by such thoughts, then, of course, you will give such weight to this testimony or no weight to it as may appear appropriate to you under the circumstances." Trial Transcript at pp. 1093–1094.

Because closing arguments of counsel were not recorded, it is not known to what extent able defense counsel employed that opportunity to further probe the bias of the two prosecution witnesses.

counsel's familiarity with § 53–63(a). Indeed counsel for Peter Carbone has coauthored an excellent article explicating the meaning of that statute. *See* Grudberg and Battaglino, "Larceny" in *Connecticut Penal Code Reference Manual* at p. 9–1 (1971).

■ The petitioners argue that the failure of the prosecution to elect a single theory denied them due process in violation of the Fourteenth Amendment of the United States Constitution. The flaw contained in the substituted informations is that they charge in the disjunctive; *i. e.*, the petitioners were charged in the alternative with two separate crimes in each count. This is similar to duplicity, which is the joining of two or more offenses in a single count. Petitioners have cited a plethora of authority for the proposition that duplicitous joinder is error. The doctrine of federalism dictates that this Court recognize the critical distinction between those cases and the present one, in that the majority of those cases arose in the context of a *federal* appellate court exercising its supervisory function over a *federal* trial court, whereas the present case involves review of a *state* court's rulings by a *federal* court. *See Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Even granting that the trial court should, as a matter of state law, have required the prosecution to specify that it was proceeding under both theories, it must be remembered that:

"Before a federal court may overturn a conviction resulting from a state trial . . . it must be established . . . that [the trial error] violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Ibid.*

*See also Schaefer v. Leone*, 443 F.2d 182, 184 (2d Cir. 1971), *cert. den.* 404 U.S. 939, 92 S.Ct. 277, 30 L.Ed.2d 251 (1972); *United States ex rel. Epton v. Nenna*, 446 F.2d 363, 369 (2 Cir. 1971), *cert. den.* 404 U.S. 948, 92 S.Ct. 282, 30 L.Ed.2d 265 (1971); *Jackson v. Smith*, 406 F.Supp. 1370 (S.D.N.Y.1976).

■ The Supreme Court teaches that the sufficiency of a charging document is to be measured by two criteria: whether it contains the elements of the offense charged and sufficiently apprises the defendant of what he must be prepared to meet, and whether the record shows to what extent a former conviction or acquittal may be plead as a defense in the event other charges are later brought against the defendant. *Russell v. United States*, 369 U.S. 749, 763–764, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). *See also The Confiscation Cases*, 87 U.S. (20 Wall) 92, 104, 22 L.Ed. 320 (1873). In other words, the charging document is meant to guarantee the defendant's Sixth Amendment right to be informed of the nature of the accusation against him and his Fifth Amendment right not be put in jeopardy more than once for the same offense. *United States v. Zeidman*, 540 F.2d 314, 316 (7th Cir. 1976). The substituted informations in the instant case are sufficient to meet both these objectives.

The petitioners can hardly claim that they were not informed of the conduct with which they were charged. The substituted informations, along with several bills of particulars, described the crimes, and petitioners' participation in them, with great specificity. An examination of the charging documents reveals that the stolen items were particularly described, dates and times given, and each petitioners' conduct specified. Each petitioner was charged, in essence, with arranging to buy the stolen merchandise prior to the thefts specifying the types of materials to be taken, helping to unload the stolen merchandise, and paying for the same. This conduct would have justified a finding of guilt either as a principal thief or as a receiver of stolen goods. As discussed previously, defense counsel knew that § 53–63(a) permitted a conviction under either theory. Petitioners were thus apprised of the nature of the charges against them, in terms of both the conduct in which they were alleged to have engaged and the statutory provisions which that conduct violated. This is not a case such as *Cole v. Arkansas*, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948), where the information charged the defendants with one crime and the state supreme court affirmed the conviction on the ground that the evidence showed that the defendants had violated a different statute.

The petitioners' notice argument is not really directed to their ignorance of which acts they were charged with in the informations. Rather, their complaint relates to the application of the law to the facts; that is, whether their acts constituted theft or receiving. This uncertainty did not prejudice the defendants at trial; the charging documents made clear what specific acts were charged. The only possible prejudice to the defendants in this situation is a potential inability to later determine precisely what they were convicted of, for double jeopardy purposes. *See United States v. Hicks,* 529 F.2d 841, 843 (5th Cir. 1976), *cert. den.* 429 U.S. 856, 97 S.Ct. 154, 50 L.Ed.2d 133. *See also United States v. Laverick,* 348 F.2d 708, 714 (3 Cir. 1965), *cert. den.* 382 U.S. 940, 86 S.Ct. 391, 15 L.Ed.2d 350 (1965) (there is no duplicity in the indictment when there is no danger that a conviction or acquittal would fail to bar a subsequent prosecution on double jeopardy grounds).

■ The charge to the jury in this case eliminated any future double jeopardy problem. The trial judge properly instructed the jury that the defendants could not be found guilty of both larceny and receiving as to any one count. *See* Trial Transcript at pp. 1108–1109, 1120. He further instructed: "If you find that the defendant was guilty of the crime of theft, . . . you will answer guilty." Trial Transcript at p. 1110. "If under the circumstances you find the defendant guilty of receiving stolen goods as to one or more or all counts, . . . you will say as to such count not guilty of larceny, but guilty of receiving stolen goods . . . ." Trial Transcript at pp. 1121–1122. Given this charge, the simple response of "guilty" to each count establishes beyond peradventure of doubt that the petitioners were convicted as principal thieves. Consequently, the petitioners will experience no difficulty in setting up the double jeopardy bar to any future prosecutions.

*Conclusion*

The absence of a constitutional error in petitioners' state trial is fatal to their petitions for habeas corpus. Having had an opportunity in the state courts for full and fair litigation of the validity of the search for and seizure of the "Parks" receipt, the petitioners may not raise that Fourth Amendment claim in this Court. Neither may they obtain relitigation of the validity of the search by bootstrapping a Fifth Amendment claim to their Fourth Amendment claim. Furthermore, the petitioners have failed to exhaust their presently available state remedies with respect to the Fifth Amendment claim, and consenting to the search for the receipt did not amount to compelled testimony. The trial court's curtailment of the cross-examination of the prosecution's two principal witnesses represented a permissible limitation on the scope of cross-examination, and was not a violation of petitioners' Sixth Amendment right to confront their accusers. Finally, the charging documents were sufficient to inform the petitioners of the nature of the charges against them, and the charge to the jury obviated any potential confusion with respect to the crime of which petitioners were judged guilty. Accordingly, the petitions for habeas corpus are denied as to both petitioners.

SO ORDERED.